IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELECTRONICS FOR IMAGING INC,<br><br>    Plaintiff,<br><br>    v.<br><br>ATLANTIC MUTUAL INSURANCE COMPANY,<br><br>    Defendant. | No. C 06-03947 CRB<br><br>**MEMORANDUM AND ORDER** |

    Plaintiff Electronics for Imaging, Inc. ("EFI") seeks to recover from its carrier the cost of litigating a prior suit, which accused it of patent infringement, misappropriation of trade secrets, breach of contract, and myriad antitrust violations, including misuse of the courts in pursuit of a monopolistic scheme. Now pending before the Court are the parties' cross motions for partial summary judgment. After considering the law and papers filed by the parties, and having had the benefit of oral argument, plaintiff's motion is GRANTED and defendant's motion is DENIED.

## BACKGROUND

    EFI manufactures interface cards that plug into computers and allow them to control printing equipment. Beginning in the late 1990's, J&L Labs, Inc. and its principal, Jan Coyle (collectively, "J&L"), attempted to sell EFI certain print-controller technology. After protracted stop-and-start negotiations and some exchange of information, which was

accompanied by the signing of multiple non-disclosure agreements, EFI declined to purchase the technology. J&L sought a patent on its technology, and in late 2001 threatened to sue EFI for infringement of the soon-to-be issued patent, as well as for misappropriation of trade secrets and breach of the non-disclosure agreements. J&L's patent issued in early January 2002.

Shortly before J&L's patent issued, EFI filed a declaratory judgment action in the Northern District of California against Coyle, seeking a declaration of non-infringement, no misappropriation, and no breach of contract.

### A. J&L's Nevada Action

J&L filed its own suit shortly thereafter in the District of Nevada, alleging patent infringement, misappropriation of trade secrets, breach of contract, unjust enrichment, and myriad antitrust violations, including the filing of "sham" litigation--namely the declaratory judgment action--in violation of 15 U.S.C. section 2.

Of significance to this case, the Complaint made the following allegations:

* "EFI has aggressively used and abused the courts to gain a competitive advantage within the Industry." Exh. C at ¶ 4.

* After communicating to J&L that J&L's settlement offer was "in the ballpark," EFI filed the declaratory action against J&L in the Northern District of California. Id. ¶ 49.

* EFI's complaint and other pleadings "misrepresented" statements made by Coyle, J&L's president. Id. ¶ 58.

* EFI moved for discovery on the question of personal jurisdiction while at the same time moving for summary judgment; but "a motion for summary judgment presupposes the absence of genuine issues of material fact in contradiction to EFI's motion for discovery, even if such discovery was targeted on questions of personal jurisdiction." Id. ¶¶ 60-61.

* In January 2002, EFI filed a lawsuit against 94 defendants alleging patent infringement. Id. ¶ 67.

* The Fourth Cause of Action, for violation of section 2 of the Sherman Act, alleged that unless EFI is restrained, it will "continue to maintain[] monopoly power by EFI's anticompetitive and unreasonably exclusionary conduct in filing claims against J&L. Id. ¶ 88.

In the demand for relief, J&L sought a declaration that EFI's filing of the declaratory judgment action violate the Sherman Act and an injunction against EFI from "[u]sing the

2

judicial process in furtherance of efforts to maintain its monopoly power in the Industry." Id. at p. 16.

EFI tendered defense of J&L's action to its insurer, Atlantic Mutual Insurance Company ("Atlantic"), defendant in the present action. Atlantic refused to defend.

J&L's Nevada action was ultimately dismissed for lack of personal jurisdiction.

**B.     J&L's Arizona and California action**

After dismissal, J&L re-filed in the District of Arizona; the action was transferred to the Northern District of California and ultimately consolidated with EFI's declaratory judgment action before another judge of this District. J&L's renewed action made the same allegations as the dismissed action. J&L then filed a Second Amended Complaint which expanded on those allegations:

\*       Through, among other things, "the pursuit of robust and frequent litigation against alleged infringers" EFI has maintained a monopoly. Exh. I, ¶ 62.

\*       "EFI has aggressively used and abused the courts to gain a competitive advantage within the Market." Id. ¶ 67.

The cause of action for violation of section 2 of the Sherman Act was amended to state: "Violation of 15 U.S.C. § 2 *Through Sham Litigation*." Id. at p. 25 (emphasis added).

The consolidated suits were settled in September of 2005. EFI now seeks to recover from Atlantic the cost of litigating J&L's lawsuits. EFI and Atlantic cross-move for partial summary judgment on the duty to defend.

## DISCUSSION

**A.     Coverage for malicious prosecution**

The Policy provides coverage for "malicious prosecution," but does not otherwise define what is meant by the term. Policy, Exh. A at pages 6, 14-15. EFI argues that the Nevada and Arizona/California complaints ("the Complaints") allege facts that could constitute malicious prosecution and therefore Atlantic Mutual owed it a duty to defend as a matter of law.

Under California law, an insurer's duty to defend is far broader than its responsibility to indemnify. Gray v. Zurich Ins. Co., 65 Cal. 2d 263, 275-77 (1966). Indeed, "[a]n

3

insurer's duty to defend must be analyzed and determined on the basis of any <u>potential</u> liability arising from facts available to the insurer from the complaint or other sources available to it at the time of the tender of defense." <u>CNA Cas. of Cal. v. Seaboard Surety Co.</u>, 176 Cal. App. 3d 598, 605 (1986) (emphasis in original). "[T]he duty to defend is so broad that as long as the complaint contains language creating the potential for liability under an insurance policy, the insurer must defend an action against its insured even though it has independent knowledge of facts not in the pleadings that establish that the claim is <u>not</u> covered." <u>Id.</u> at 606 (emphasis in original). The duty to defend does have a limit, however; where there is no possibility of coverage, no duty to defend can arise. <u>Aetna Cas. & Sur. Co. v. Superior Court</u>, 19 Cal. App. 4th 320, 327 (1993) (citing <u>Royal Globe Ins. Co. v. Whitaker</u>, 181 Cal. App.3d 532, 537 (1986); <u>Safeco Ins. Co. of America v. Andrews</u>, 915 F.2d 500, 502 (9th Cir. 1990)).

  EFI argues that <u>CNA Cas. of Cal</u>. establishes that the factual allegations of the Complaints gave rise to a potential for liability for malicious prosecution and therefore Atlantic had a duty to defend. In <u>CNA</u>, the operative complaint in the underlying action made a single claim for violation of the antitrust laws. The antitrust claim included specific factual allegations, including the allegation that the defendants:

> Agreed to file and caused the filing of false, frivolous and sham counterclaims in this action for the purpose of punishing plaintiffs and further securing and maintaining the monopoly position now enjoyed by defendants.

176 Cal.App.3d at 608 n.3. The court held that

> the complaint's allegation in subparagraph 21(q) that [the insured] filed "false, frivolous and sham counterclaims" in the Salveson action raised at least the possibility of liability under malicious prosecution coverage contained in the insurance policies. . . . The trial court did not err in finding that these factual allegations gave rise to the *potential* of [the insured's] liability under [the] policies, and that [the insurer] therefore bore the obligation to defend their insured, no matter how unmeritorious these claims may have been.

<u>Id.</u> at 609.

  <u>CNA</u> is dispositive. Similar to the complaint in <u>CNA</u>, the Complaints, including the initial Complaint, alleged that EFI filed a lawsuit that made misrepresentations, that is false

4

statements. It also accused EFI of taking unreasonable positions in that lawsuit, of affirmatively using the lawsuit for anticompetitive reasons, and of engaging in "sham litigation." These factual allegations raised at least the *potential* of liability under malicious prosecution coverage. There is no meaningful distinction between the allegation of "false and fraudulent" counterclaims in CNA and the allegations of misusing the courts through "sham litigation" in this case.

Atlantic first responds that the allegations of J&L's complaints do not state a claim for malicious prosecution.[1] It argues that at the time EFI tendered J&L's initial complaint for coverage, EFI's declaratory judgment action had not reached a legal termination in favor of J&L; the action was still pending. It also contends that EFI's action was not without probable cause as a matter of law given that the patent dispute between EFI and J&L gave EFI probable cause to file a declaratory judgment action. Finally, it contends that the complaint did not allege any "malicious" conduct.

CNA rejected Atlantic's argument:

> INA argues that this allegation in the Salveson complaint regarding "false, frivolous and sham counterclaims" could not possibly be covered by the malicious prosecution provision in its policy, because any cause of action for malicious prosecution requires a prior termination of the earlier proceeding in favor of the party alleging malicious prosecution. However, when presented with a tender of defense, it is not insurer's place to analyze and evaluate the underlying claim of liability in order to reject the defense of any claim that is not meritorious. To the contrary, INA's own policy provides that it shall have the "duty to defend *any* suit against the Insured seeking damages on account of such . . . injury [including injury arising out of malicious prosecution] *even if any of the allegations of the suit are groundless,* false or fraudulent . . . ." The fact that INA may have known of a good defense, even an ironclad one, to the malicious prosecution claim did not relieve it of its obligation to defend its insured.

176 Cal.App.3d at 609 n.4 (emphasis in CNA); see also id. at 609 (the insurer "bore the obligation to defend their insured, no matter how unmeritorious these claims may have

---

[1] The elements of such a claim are that the prior action was (1) commenced by the defendant; (2) pursued to a legal termination in the plaintiff's favor; (3) brought without probable cause; and (4) initiated with malice. Sheldon Appel Col v. Albert & Oliker, 47 Cal.3d 863, 871 (1989).

5

been"). Regardless of the merits of the potential malicious prosecution claim, since the facts alleged a potential malicious prosecution claim Atlantic had a duty to defend.

The only case cited by Atlantic to support its argument that the complaint must allege every element of the covered claim for coverage to exist is Lindsey v. Admiral Ins. Co., 804 F. Supp. 47 (N.D. Cal. 1992). To the extent Lindsey stands for that proposition, it is contrary to controlling California cases and CNA in particular, which it did not cite. Moreover, the only authority cited by Lindsey for this proposition is the district court decision which was reversed in Lunsford v. Am. Guarantee & Liability Ins. Co., 18 F.3d 653 (9th Cir. 1994).

At oral argument Atlantic also argued that there was no potential for a malicious prosecution claim because EFI's lawsuit was against Coyle and not J&L. J&L's 2002 complaint, however, alleged that Coyle "ultimately controls" J&L, Exh. C ¶ 7, and the later Complaint alleged that he "managed" J&L. Exh. I ¶ 5. Thus, the potential for a malicious prosecution claim existed.

Atlantic's attempt to distinguish CNA is equally unavailing. First, that CNA found several different grounds for the insurer's duty to defend is immaterial; the opinion makes it clear that the court found that the allegation of "false, frivolous and sham counterclaims" in and of itself was an independent reason for the insurer's duty to defend. 176 Cal.App.3d at 608-09.

Next, Atlantic emphasizes that the policy in CNA provided that the insurer would defend any suit, "even if any of the allegations of the suit are groundless." 176 Cal.App.3d at 609 n.4. While the CNA policy did carry that additional language, the court's opinion cannot be read as turning on that additional language. The Policy here provides that the insurer has a duty to defend "any suit;" Atlantic would have the Court read into that language the caveat of any suit, but only if the claims have some merit. No case supports Atlantic's narrow interpretation of the "any suit" language. To the contrary, the law in California is that "[w]here there is coverage an insurer must defend even though the insured may ultimately prove the case to be legally meritless. To conclude otherwise would not only frustrate the insured's reasonable expectation that the insurer will defend, but also create a peculiar form

6

of coverage restricted to only those cases which insurer decides are brought on meritorious legal and factual grounds." Wood, 217 Cal.App.3d 944, 948 (1990).

### 2. The Statute Of Limitations

J&L's initial complaint was eventually dismissed (after two trips to the Ninth Circuit) for lack of personal jurisdiction. The action was re-filed in Arizona in May 2004. Atlantic notes that its coverage period ended more than two years before the Arizona complaint was filed, and that the statute of limitations for malicious prosecution and abuse of process is one year. Therefore, argues Atlantic, the implied malicious prosecution alleged in the Arizona/California action is time-barred unless it occurred within a year of filing that complaint; if it occurred within a year of the filing of the complaint it is outside the policy period. This argument is directed only at Atlantic's duty to defend the Arizona/California action, and not the original Nevada action. In any event, this argument, too, fails.

As EFI reveals in its opposition, Atlantic's argument ignores that the statute of limitations was tolled for the entire period of the Nevada action and appeals. The Nevada action was not finally concluded until February 2004 and J&L refiled its action in May 2004. Thus, the statute ran only two months between the filing of the first action and the filing of the second. Atlantic has therefore not shown that any malicious prosecution claim would necessarily fall outside its policy period. In any event, Atlantic's argument is defeated by the rule that the insurer as a duty to defend regardless of the merits of the claim.

### 3. Insurance Code Section 533

California Insurance Code section 533 provides that "[a]n insurer is not liable for a loss caused by the wilful act of the insured." Atlantic argues that since malicious prosecution is an intentional tort, section 533 eliminates both its duty to indemnify and its duty to defend against such claims. Unfortunately for Atlantic, this is not the law in California. While the public policy announced in section 533 precludes indemnification for damages caused by malicious prosecution, an insurer promising coverage for such losses has a duty to defend against this type of claim. Downey Venture v. LMI Ins. Co., 66 Cal. App. 4th 478, 507-508 (1998). In Downey, just as in this case, the insurer promised to defend and indemnify a

claim for malicious prosecution. The court held that although indemnification was barred under section 553, section 553 does not bar a promise to defend a claim based on a wilful act of the insured.

### 4. The Intellectual Property Exclusion

EFI's coverage contained an "Intellectual Property Exclusion" that disclaimed any coverage for claims arising from infringement of copyrights, trademarks, or "any other intellectual property." Atlantic argues that J&L's action arose from EFI's alleged intellectual property violations, and that for this reason no coverage was available under the policy. If the underlying actions had been suits solely for patent infringement, and did not allege facts giving rise to a potential malicious prosecution claim, Atlantic would be correct. No duty to defend arises where the insurance contract plainly shows that there is no possibility of coverage. Aetna, 19 Cal. App. 4th at 327.

However, "[u]nder settled law, the existence of a *potential* for coverage of one claim triggers a duty to defend, which duty necessarily includes a defense to the *entire* action even though that may include claims which are not potentially covered." Downey Venture, 66 Cal. App. 4th at 489, n.6 (emphasis in original) (citing Buss v. Superior Court, 16 Cal. 4th 35, 48 (1997). The exclusion does not apply to the malicious prosecution coverage.

## B. Coverage for Abuse of Process

EFI also argues that Atlantic had a duty to defend pursuant to the Ninth Circuit's decision in Lunsford v. American Guarantee & Liability Ins. Co., 18 F.3d 653 (9th Cir. 1994). In Lunsford, the Ninth Circuit held that under California law "a general liability insurance policy which promises to defend an insured against 'malicious prosecution' includes a duty to defend against an 'abuse of process' claim." Id. at 654-56.

The elements of the tort of abuse of process are "first, an ulterior purpose, and second, a willful act in the use of the process not proper in the regular conduct of the proceeding." Oren Royal Oaks Venture v. Greenberg, Bernhard, Weiss & Karma, Inc., 42 Cal.3d 1157, 1168 (1986). The Complaints indisputably had the potential to state a claim for abuse of process. They all expressly alleged that EFI "abused the courts." Exh. C, ¶¶ 4-5, Exh. I,

8

¶ 67. The gravamen of these allegations is that EFI used the courts to gain a competitive advantage over J&L.

Atlantic first argues that the Complaints do not allege the elements of abuse of process, for example, a willful act not proper in the regular conduct of the proceeding. But this is, again, the rejected argument that the complaint must state a claim in order for the insurer to have a duty to defend.

Next, Atlantic urges the Court not to follow Lunsford even though it concedes that the California courts have not ruled on the issue and therefore have not contradicted Lunsford. This district court is bound by Lunsford. See Zuniga v. United Can Co., 812 F.2d 443, 450 (9th Cir.1987) (stating that district courts are bound to follow the precedents of their own circuit); see also Hultz v. Federated Mutual Ins. Co., 817 F.Supp. 59, 61-62 (C.D. Ill. 1993) (holding that a federal district court is bound by the federal appellate court's interpretation of state law).

## CONCLUSION

Under CNA, Downey, and Lunsford Atlantic had a duty to defend the underlying actions. Accordingly, EFI's motion for partial summary judgment is GRANTED and Atlantic's cross motion for summary judgment is DENIED. The parties shall appear for a further case management conference at 8:30 a.m. on February 2, 2007.

**IT IS SO ORDERED.**

Dated: December 15, 2006

CHARLES R. BREYER
UNITED STATES DISTRICT JUDGE